UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

---

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND REMOVED ACTION TO STATE COURT (DKT. 12)**

### I. Introduction

Raul Garfias ("Plaintiff" or "Garfias") brought this action in the Los Angeles Superior Court on May 8, 2017. He advances claims against his former employer, Team Industrial Services, Inc. ("Team" or "Defendant"), a Texas corporation also doing business as DK Valve and Supply Inc. Ex. 1 to Notice of Removal, Complaint, Dkt. 1-1.[1] The Complaint presents several causes of action, including: (i) discrimination; (ii) retaliation; (iii) failure to prevent discrimination and retaliation; (iv) failure to provide reasonable accommodation; and (v) failure to engage in a good faith interactive process, all in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 *et seq.* Complaint, Dkt. 1-1 ¶¶ 28-73. The Complaint also alleges wrongful termination in violation of public policy, *id.* ¶¶ 84-91, and seeks declaratory relief. *Id.* ¶¶ 73-83.

On June 8, 2017, Team removed the action pursuant to 28 U.S.C. §§ 1441 and 1446. Notice of Removal ("Notice"), Dkt. 1 at 2. The removal was based upon Team's representation that, unlike Plaintiff, it is not a citizen of California for purposes of diversity jurisdiction, and that the amount of controversy exceeds $75,000. *Id.* at 4-6. In response, Plaintiff moved to remand the action ("Motion"). Dkt. 12. Plaintiff argues that there is no diversity jurisdiction because Team has failed to meet its burden to establish that the amount in controversy exceeds $75,000. *Id.* at 6. Defendants opposed the Motion ("Opposition") (Dkt. 15), and filed a request for judicial notice ("Request" (Dkt. 15-1)). Plaintiff replied. Dkt. 16. Plaintiff also filed objections to certain evidence Defendant proffered in the Opposition ("Evidentiary Objections"). Dkt. 17.

A hearing on the Motion was held on October 2, 2017. At the conclusion of the hearing, the Motion was taken under submission. For the reasons stated in this order, the Motion is **DENIED**.

---

[1] The Complaint also seeks relief against 20 "Doe" defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

## II. Factual and Procedural Background

The Complaint alleges that Plaintiff worked with Team as a valve technician. Complaint, Dkt. 1-1 ¶ 15. Plaintiff alleges that Team terminated his employment effective January 13, 2017. *Id.* ¶ 21. The claims of discrimination and retaliation allege that each occurred in response to Plaintiff's decision to take disability leave. *Id.* ¶¶ 17-20.

The Complaint does not state a specific amount of claimed damages. However, it seeks recovery of lost wages and medical expenses, as well as damages for emotional distress, punitive damages and an award of attorney's fees. *See* Complaint, Dkt. 1-1, at 24-25. Team contends that these claims and demands placed more than $75,000 in controversy as of the time of removal. In partial support of this contention, Team proffered as exhibits several jury verdicts from what it contends were wrongful termination actions in California with claims similar to those presented here. *See* Dkt. 1, Ex. 3.

## III. Request for Judicial Notice

As noted, Team has requested judicial notice of several court decisions and filings. *See* Defendant's Request for Judicial Notice ("Request"), Dkt. 15-1. Fed. R. Evid. 201(b) permits judicial notice of facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Each of the requested documents is a court record that is self-authenticating pursuant to Fed. R. Evid. 902. Therefore, judicial notice is proper and the Request is **GRANTED**.[2]

## IV. Analysis

    A.    Legal Standards

A motion to remand is the procedural means to challenge the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). In general, a state civil action may be removed only if, at the time of removal, it is one over which there is federal jurisdiction. 28 U.S.C. § 1441(a). One basis for federal jurisdiction is when the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states. 28 U.S.C. §§ 1332, 1441. Complete diversity of citizenship is required, *i.e.*, "the citizenship of each plaintiff [must be] different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

The amount in controversy requirement is satisfied with respect to an action that has been removed if the

---

[2] Court records as to which judicial notice is taken may be used to establish the fact of that litigation, but not necessarily for the truth of the matters asserted in those records. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in another case so as to supply, without the formal introduction of evidence, facts essential to support a contention in a case then before it."). This standard is applied in this Order with respect to the documents as to which judicial notice is taken.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

removing party can show, by a preponderance of the evidence, that this amount exceeds $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996). The determination of the amount in controversy is not limited to a review of the face of the complaint. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Because federal courts are ones of limited jurisdiction, the removal statute is to be strictly construed; any doubt about removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

  B.  Application

    1.  <u>Diversity of Citizenship</u>

"A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State [] where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). The Notice alleges that Team is incorporated under the laws of Texas, and has its principal place of business in Texas. *See* Dkt. 1, at 5. Therefore, Team is a citizen of Texas for purposes of diversity jurisdiction.

For diversity jurisdiction, citizenship of individuals is determined by the state in which the individual is domiciled at the time a lawsuit is filed. *See Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000). Domicile is determined by physical presence with an intention to remain there. Plaintiff alleges in the Complaint that he resided, and at all relevant times has resided, in California. Defendant states in the Notice that, throughout the course of his employment with Team, Plaintiff stated that he lived in California. *See* Dkt. 1, at 3. No issues have been presented as to Plaintiff's intention to remain in California. Therefore, Plaintiff is a citizen of California for purposes of diversity jurisdiction.

Because the parties are citizens of different states, there is diversity jurisdiction over this matter. *See Hunter* 582 F.3d at 1043.

    2.  <u>Amount in Controversy</u>

      a.  In General

When removal is based on diversity of citizenship, and the complaint does not state an amount in controversy, the defendant's notice of removal may do so. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). *Dart Cherokee* held that Section 1446 provides the pleading standard for adequately alleging an amount in controversy when one is not alleged in the complaint. It determined that in support of the removal of an action, plausible allegations of an amount in controversy in excess of $75,000 are sufficient, and that a "statement 'short and plain' need not contain evidentiary submissions." *Id.* Where a plaintiff contests the amount in controversy alleged by the defendant, the defendant bears the burden of proof by a preponderance of the evidence that at least $75,000 was in controversy at the time of the removal. *Id.* at 553-54 (citing 28 U.S.C. 1446(c)(2)(B)) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

Plaintiff contends that Defendant "was required to submit admissible, summary judgment-type evidence to meet its burden in establishing the amount in controversy." Dkt. 12, at 8. Although the Defendant bears this burden of proof, it was not obligated to file the evidence together with the notice of removal. As noted, at that time, it was required only to make sufficient allegations that the amount in controversy exceeded $75,000. It did so. Because the Motion was filed, Defendant was obligated to present evidence sufficient to show that amount under a preponderance standard. *See* 1446(c)(2)(B); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The Defendant may rely on evidence even if that evidence was not submitted with the notice of removal. *See Valdez*, 372 F.3d at 1117; *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375-77 (9th Cir. 1997).

The Complaint seeks a monetary award with respect to each of the following: (i) economic damages; (ii) emotional distress damages; (iii) punitive damages; and (iv) attorney's fees. For purposes of calculating the amount in controversy, it is appropriate to total the amounts that have been shown as to each of these categories. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

        b.   Economic Damages

Plaintiff's claim for economic damages is based primarily on lost wages. Complaint, Dkt. 1-1 ¶ 25. Relying on the declaration of a Vice President at Team, whose job duties include accessing employment and payroll records, Team claims that, at the time of his termination, Plaintiff was being paid $16.00 per hour, or approximately $2773 per month. *See* Dkt. 15, at 11-12; Declaration of Eddie Kinzler ("Kinzler Decl."), Dkt. 15-2, ¶¶3-4. Based on this calculation, Team argues that the amount in controversy in back pay is $16,640 in lost wages from the time of termination until the time of removal, and $44,368 in lost wages from the time of removal to a "conservatively estimated trial date" in October 2018. Dkt. 15, at 12-14.[3]

Plaintiff also seeks an award of future lost wages damages (Complaint, Dkt. 1-1 ¶ 25). Defendant argues that at least one year of front pay, which totals $33,276, was at issue at the time of removal. Dkt. 15, at 14. In sum, Defendant claims that the amount of back pay from termination until removal ($16,640), the amount of lost wages from the time of removal until a projected trial date ($44,368), and the amount of front pay for one year after trial ($33,276) totals $94,284 in economic damages.

Plaintiff responds that it is not appropriate to calculate the amount in controversy at the time of removal by estimating the amount of lost wages that would be claimed as of a potential, future trial date. *See* Dkt. 16, at 9 (citing *Soto v. Kroger Co.*, No. 12-cv-0780-DOC, 2013 WL 3071267, at *3 (C.D. Cal. June 17, 2013)). Plaintiff also contends that Defendant's calculations fail to take into account the possibility that Plaintiff may be able to mitigate damages, by obtaining a new job. Dkt. 16 at 12.

Plaintiff's arguments have some force. The amount in controversy for purposes of determining jurisdiction

---

[3] After the briefing on this Motion was filed, the parties filed a joint case management report pursuant to Fed. R. Civ. P. 26(f). Dkt. 18 ("Rule 26(f) Report"). There, Plaintiff provided an estimate of $17,920 for his alleged lost wages from the date of termination through September 22, 2017, the date that Report was filed. *Id.* at 6. Although this is $1280 more than the figure presented by Defendant, it is unnecessary to address the discrepancy, because it does not change the outcome of the overall analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

over a matter that has been removed is measured as of the date of the removal. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Defendant's reliance on lost wages to some "hypothetical trial date" is not entirely consistent with this rule. It is also somewhat speculative given that the trial date was unknown at the time of removal as was what evidence might be offered as to lost wages or mitigation. *Palmer v. Progress Rail Services Corp.*, No. CV 16-1570-FMO, 2016 WL 1090553, at *2 (C.D. Cal. March 21, 2016). Other district courts addressing similar causes of action on removal have considered only the amount of back pay that allegedly has accrued as of the date of removal.[4]

Less persuasive is Plaintiff's argument that the calculation of potential claims for back pay as of the time of removal should be discounted due to the possibility that he had mitigated damages as of that time. Potential affirmative defenses do not affect the amount in controversy analysis for purposes of determining federal jurisdiction. Instead, the determination of the amount at issue is based on the allegations in the complaint, and evidence that concerns them. *See Perez v. Alta-Dena Certified Dairy, LLC*, 647 Fed. Appx. 682, 684-85 (9th Cir. 2016) (citing *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 292 (1938)). Furthermore, the basis for this argument is not consistent with what Plaintiff stated in the Rule 26(f) Report, *i.e.*, that his lost wages were approximately $17,920. There was no mention of, or reduction for, any mitigation, nor any disclosure of new employment. Dkt. 18, at 6.

Based on the foregoing, it is appropriate to include back pay of $16,640 in calculating the amount in controversy as of the time of removal.

      c. Emotional Distress Damages

Because the Complaint seeks an award of damages for emotional distress, their potential award may be considered in calculating the amount in controversy as of the time of removal. Team cites jury awards for emotional damages in what it contends were analogous employment cases. Relying on damage awards in similar cases may be appropriate in measuring the range of potential, non-economic damages. *See Kroske*, 432 F.3d at 980. However, Team had to show why the cases on which it relies are analogous to this one, *i.e.*, presented similar factual circumstances. *See Soto*, 2013 WL 3071267, at *3-4; *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012) ("While [] jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue.").

Judicial notice of the verdicts in the cases proffered by Team do not provide the basis for determining whether some or all of them presented factual settings that were similar to the one alleged here. Judicial notice of those verdicts does not provide "facts essential to support [such] a contention . . . without formal introduction of evidence." *M/V Am. Queen*, 708 F.2d at 1491. Team has shown only that these were employment cases, not that any presented similar facts to those alleged here. *See Soto*, 2013 WL 3071267, at *4 ("[T]he showing here must be for cases with analogous facts, not simply cases where the defendant fired the plaintiff."); *Galvan v. Walt Disney Parks & Resorts U.S., Inc.*, 2017 WL 1033968, at *3

---

[4] *See, e.g.*, *Palmer*, 2016 WL 1090553, at *2; *Soto*, 2013 WL 3071267, at *3; *Fortescue v. Ecolab Inc.*, No. CV 14-0253-FMO, 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014); *Mendoza-Topete v. Smarte Carte, Inc.*, No. CV 16-04571-SJO, 2016 WL 4974941, at *3 (Sept. 15, 2016); *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB, 2015 WL 898468, at *4 (C.D. Cal. March 3, 2015); *Ponce v. Medical Eyeglass Center, Inc.*, No. 15-CV-04035-CAS, 2015 WL 4554336, at *2 (C.D. Cal. July 27, 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

(C.D. Cal. Mar. 17, 2017) (rejecting analogies to cases with similar legal contentions absent a showing that those cases also had "substantially similar factual scenarios."). In short, there is no showing that those cases involved similar claims as to the basis for discrimination or employees who were compensated at levels similar to that claimed by Plaintiff. Indeed, it appears that in some of these matters the economic claims were substantially greater than those presently advanced here.[5]

That the evidence of the amount of emotional distress damages is limited, does not mean that it is appropriate to disregard the claim in determining the amount in controversy. The claim was made, and there must have been a good faith basis to do so under California law. Team has proposed a 2:1 ratio of emotional distress damages to economic damages. Dkt. 15, at 15-16. Considering Team's failure to demonstrate the factual similarities between this case and those on which it relies, Plaintiff's failure to provide any reasonable estimate of emotional distress damages, and a common sense assessment of such claims in the context of an employment action, it is reasonable to apply a 1:1 ratio to emotional distress and economic damages for purposes of the present jurisdictional analysis.

Based on the foregoing, it is reasonable to include $16,640 in emotional damages in the amount in controversy analysis.

### d. Punitive Damages

Punitive damages are to be included in the amount in controversy analysis when, like here, they are sought in the operative complaint. *Gibson*, 261 F.3d at 945; *Halidman v. Continental Casualty Co.*, 666 Fed. Appx. 612, 613-14 (9th Cir. 2016). Punitive damages are available in FEHA cases. *See, e.g.*, *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 693 (2009).

There is no set rule on how to calculate a potential award of punitive damages in connection with the amount in controversy analysis at the time of removal. Defendants propose a 1:1 ratio with compensatory damages. Dkt. 15, at 16. A ratio based on the amount of compensatory damages is a familiar method for placing limitations on punitive damages. *See, e.g.*, *See, e.g.*, *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 424-426 (2003); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 718 (2009). Furthermore, a 1:1 ratio has been described as "conservative" for purposes of assessing the amount in controversy requirement. *See Guglielmino*, 506 F.3d at 698; *Zapata Fonseca v. Vigo Importing Co.*, No. 16-cv-02055-EJD, 2016 WL 6249006, at *2 (N.D. Cal. Oct. 26, 2016); *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015).

Once again, a common sense assessment of this issue is warranted in light of the evidence that is available. Plaintiff has sought the award. The ultimate facts that will be decided in this matter were unknown at the time of removal. The allegations included that the discrimination was the result of a disability leave. Punitive damages may be awarded in connection with the underlying claim, but must have some nexus to the amount of compensatory damages.

---

[5] *See, e.g.*, RJN Ex. 1, Dkt. 15-1 at 9 ($300,000 in past non-economic damages with $295,166 in past economic damages); RJN Ex. 2, Dkt. 15-1 at 20 ($82,000 in past non-economic damages with $233,709 in past economic damages); RJN Ex. 3, Dkt. 15-1 at 31 ($1,250,000 non-economic, $69,000 economic); RJN Ex. 4, Dkt. 15-1 at 40 ($250,000 non-economic; $317,500 economic).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | | Date | October 10, 2017 |
|---|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | | |

Based on the foregoing, a conservative assessment of potential punitive damages as of the time of removal, which is supported by a preponderance of the evidence, is $16,640. This is just 50% of the amount of statutory and tort damages that are at issue.

       e.  Attorney's Fees

Team argues that attorney's fees should be projected through at least the time of trial, and that such fees in comparable employment law cases often exceed $75,000. Dkt. 15, at 17-18. Plaintiff argues that only the attorney's fees incurred as of the time of removal may be estimated or considered. Dkt. 16, at 15-16.

District courts have reached different outcomes on this issue. *Compare Faulkner v. Astro-Med, Inc.*, No. CV-99-2562-SI, 1999 WL 820198, at \*4 (N.D. Cal. Oct 4, 1999) (declining to consider post-removal attorney's fees), *and Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998) (same) *with Garcia v. ACE Cash Express, Inc.*, No. CV-14-0285-DOC, 2014 WL 2468344, at \*5 (C.D. Cal. May 30, 2014) (considering post-removal attorney's fees), *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (same).

To consider attorney's fees likely to be incurred after removal could be deemed inconsistent with limiting the amount of damages to those shown as of the time of removal. However, the amount of a future damage award is difficult to assess. There are many factors that can affect the determination of this amount in the future. There is less uncertainty, however, that attorneys will spend time pursuing the claims on behalf of their clients, and if successful, seek an award of their fees. Thus, a future demand for such fees can be assessed as "the amount that can reasonably be anticipated at the time of removal." *See Simmons*, 209 F. Supp. 2d at 1035 n.5.[6]

Team's reliance on the awards of attorney's fees in prior cases has the same limitation as its parallel reliance on those cases as to damage awards. There is not a sufficient showing of a factual nexus between those cases and this one. However, "employment claims have been found to require substantial effort from counsel." *Sasso*, 2015 WL 898468, at \*6 (citing *Garcia*, 2014 WL 2468344, at \*5) (internal quotation marks omitted). In *Sasso*, the court estimated that $30,000 was a reasonable and conservative estimate for attorney's fees in a FEHA and wrongful termination case. *Id.*, at \*6. There the court found $300 per hour to be a reasonable and conservative fee rate, and 100 hours to be a reasonable and conservative time commitment estimate. *Id.*

Plaintiff's counsel has sought an award of its fees incurred in connection with the Motion. *See* Declaration of Sylvia Panosian ("Panosian Decl."), Dkt. 12, at 12; Declaration of Kaveh Elihu ("Elihu Decl."), Dkt. 12, at 14. Panosian declares that her hourly rate is $300 (Panosian Decl. ¶ 2), and Elihu declares that his hourly rate is $650 (Elihu Decl. ¶ 2). Together, they declare that they will have spent 9.5 hours on this Motion, with most of the time spent by Panosian. Panosian Decl. ¶¶ 2-3. Given these facts, it is reasonable to conclude that, as of the time of removal, Plaintiff's counsel would spend substantially more

---

[6] *Simmons* also recognized that *Conrad*, on which Plaintiff relies here, based its determination that post-removal attorney's fees could not be included in the amount in controversy on an inaccurate reading of *Miranti v. Lee*, 3 F.3d 925 (5th Cir. 1993). *See Simmons*, 209 F. Supp. at 1035 n.5. *Miranti* involved a motion for attorney's fees under Section 1447(c). 3 F.3d at 928-29. It did not hold that attorney's fees could not be reasonably anticipated beyond the date of removal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04282 JAK (AGRx) | Date | October 10, 2017 |
|---|---|---|---|
| Title | Raul Garfias v. Team Industrial Services, Inc. | | |

than 10 hours on this matter. Indeed, even without this precise information, it would be reasonable to conclude that, as of the time of removal, Plaintiff's counsel would spend at least 100 hours on this matter as it proceeds. Applying the same ratio of time spent by the two counsel on the request for an award of attorney's fees, would result in allocating 5 hours to Elihu and 95 hours to Panosian. This would result in a total amount of $31,750 (95 hours x $300 for Panosian + 5 hours x $650 for Elihu). This is also a very conservative estimate because both as to certain pre-trial matters and at trial, the ratio of the time spent by the two attorneys would be likely be closer to 1:1.

In light of the foregoing, it is reasonable to calculate the amount of attorney's fees at issue as of the time of removal as $31,750.

f. Total Amount in Controversy

Team has shown, by a preponderance of the evidence that at least $16,640 in economic damages, $16,640 in emotional distress damages, $16,640 in punitive damages, and $31,750 in attorney's fees was in controversy as of the time of removal. These figures total $81,670. This does not include medical expenses, which are alleged but not quantified. Because the amount in controversy is greater than $75,000, the Motion is **DENIED.**

C. Plaintiff's Request for Attorney's Fees and Costs

Plaintiff's request for an award of attorney's fees in connection with the Motion is also **DENIED**. Its premise is that the removal was improper because the amount at issue did not meet the jurisdictional requirement. That position has been rejected. A request for an award of such fees, which is premised on 28 U.S.C. § 1447(c), may be granted "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). That standard has not been met here.

**V.     Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**. Plaintiff's Request for Attorney's Fees and Costs in connection with litigating the Motion is also **DENIED**.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |